IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JASON BISHOP,

    Plaintiff,

v.                                                          No. 23-cv-00455-JCH-KBM

THE BOARD OF COMMISSIONERS OF
THE COUNTY OF BERNALILLO,
METROPOLITAN DETENTION CENTER,
JASON JONES, SERGIO SAPIEN,
TIM KELLER,

    Defendants.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL OF AMENDED COMPLAINT

    THIS MATTER is before the Court on Jason Bishop's *pro se* Amended Complaint for Violation of Civil Rights, filed June 14, 2023. (Doc. 2) (the "Complaint"). When he filed the Complaint, Plaintiff was a confined at the Bernalillo County Metropolitan Detention Center ("MDC") serving the remainder of his state prison sentence. (Doc. 2 at 4). Plaintiff claims that the conditions of confinement at MDC violated his rights guaranteed by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. (Doc. 2 at 3). Having reviewed the Complaint and the relevant law pursuant to the screening requirement of 28 U.S.C. § 1915A, the Court finds that the Complaint must be dismissed for failure to state a claim upon which relief can be granted. Plaintiff will be granted an opportunity to amend.

    Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 3) (the "IFP Motion") is also before the Court, and shall be granted.

I.    <u>Background</u>.

For the limited purpose of this Memorandum Opinion and Order, the Court assumes that the following facts taken from the allegations in the Complaint are true.

Plaintiff alleges that his incarceration at MDC began on September 24, 2021. (Doc. 2 at 4) From September 14, 2021 through June 10, 2023, Plaintiff alleges that he was locked in his cell for several days (amounting to seventy-two hours a week) and deprived of out-of-cell time to shower, exercise, or socialize. (Doc. 2 at 5). He also alleges that on or about October 23, 2021, he witnessed the brutal murder of Leon Martinez. (Doc. 2 at 5). After the murder, Plaintiff alleges that "for no apparent reason" he was placed in solitary confinement for ten days. (Id.). Then, on January 6, 2022, Plaintiff alleges that he contracted Covid, but did not receive treatment. (Id.). Plaintiff claims that he experienced mental anguish and physical suffering when he was locked in his cell for seventy two hours a week from mid-September 2021 through mid-June 2023; that he has post-traumatic nightmares and fears for his life after witnessing Martinez's murder; that the ten-day solitary confinement term constituted cruel and unusual punishment; and that his health has declined because he contracted Covid such that he now has constant kidney pain. (Id.). He seeks monetary damages, claiming the foregoing violated his rights guaranteed by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. (Doc. 2 at 3, 5).

II. <u>Analysis.</u>

    A. <u>Standard of Review</u>.

As Plaintiff is proceeding *pro se* in this civil action against a governmental entity, the Complaint must be screened under 28 U.S.C. § 1915A. The Court must dismiss a complaint that "is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]" 28 U.S.C. § 1915A(b)(1). A pleading that states a claim for relief must contain . . . a short and plain statement

of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Among other things, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because he is pro se, the Court construes Plaintiff's pleadings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (discussing the Court's construction of *pro se* pleadings). This means that "if the court can reasonably read the pleadings to state valid claim on which [he] could prevail, it should do so despite [his] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction or his unfamiliarity with pleading requirements." *Id.* It does not mean, however, that the court should "assume the role of [his] advocate[.]" *Id.*

      B.      <u>Pleading Standards Governing a § 1983 Claim.</u>

Plaintiff seeks to state claims under 42 U.S.C. § 1983, which provides a vehicle for the vindication of substantive rights guaranteed by the Constitution and laws of the United States. § 1983 allows a person whose federal rights have been violated by state or local officials "acting under color of state law" to sue those officials. A § 1983 claim is comprised of two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *McLaughlin v. Bd. of Trustees of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000).

C.     Plaintiff's Claims Against MDC and Bernalillo County.

Plaintiff's claims against MDC must be dismissed with prejudice because a "detention facility is not a person or legally created entity capable of being sued." *White v. Utah*, 5 F. App'x 852, 853 (10th Cir. 2001); *see Gaines v. U.S. Marshals Serv.*, 291 F. App'x 134, 135 (10th Cir. 2008) (a county detention center "is not a suable entity"). In the § 1983 context, "suing a detention facility is the equivalent of attempting to sue a building." *Gallegos v. Bernalillo Cnty. Bd. of Cnty. Commr's*, 272 F. Supp. 3d 1256, 1267 (D.N.M. 2017). Plaintiff's claims against the Curry County Detention Center shall be dismissed with prejudice.

To the extent Plaintiff intends to pursue claims against the jail, the Board of County Commissioners of the County of Bernalillo (named as a defendant in this case) is the proper defendant. *See Mayfield v. Pres Hosp. Admin.*, No. CV 17-00398 JCH/KRS, 2021 WL 3772214, at *3 (D.N.M. Aug. 25, 2021) ("MDC is an agency of Bernalillo County, not a municipal agency[.]"); NMSA 1978 § 4-46-1 ("In all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be the board of county commissioners of the county of ..........,"). If Plaintiff wishes to pursue claims against the Curry County Board Commissioners, he should file an amended complaint identifying that entity as a defendant. As presently pled, however, Plaintiff's claims against Bernalillo County are not viable.

A county may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (Municipal liability is limited "to action

for which the municipality is actually responsible," which is different from the acts of its employees.). Therefore, to state a claim against a county, a plaintiff must allege facts showing that an official policy is the moving force behind the injury alleged. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). This requires the plaintiff to show "(1) a causal relationship between the policy or custom and the [alleged violation of a Constitutional right] and (2) deliberate indifference." *Burke v. Regaldo*, 935 F.3d 960, 999 (10th Cir. 2019). For § 1983 municipal-liability purposes "a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision" are considered an "official policy or custom." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). The "deliberate indifference" standard may be satisfied by showing that "a municipal actor disregarded a known or obvious consequence of" the attending custom or policy. *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Here, Plaintiff has not identified an official policy or custom underlying the alleged harm. Nor has Plaintiff pled facts satisfying the deliberate indifference standard. Plaintiff's claims against Bernalillo County must therefore be dismissed. If Plaintiff intends to pursue claims against the County, he should endeavor to plead facts satisfying the foregoing standards in a second amended complaint.

        D.    <u>Plaintiff's Claims Against Tim Keller, Sergio Sapien, and Jason Jones.</u>

Plaintiff sues Tim Keller, the Mayor of Albuquerque; Jason Jones, the Chief of MDC; and Sergio Sapien, the Assistant Chief of MDC in their official capacities.  (Doc. 2 at 2-3). Suing an official in his official capacity is the same as asserting a claim against the municipality or county the official represents. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010); *see also Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("[A]n official-capacity

suit is, in all respects other than name, to be treated as a suit against the entity."). If Plaintiff wishes to sue Keller, Sapien, and/or Jones in their official capacities, the claims are governed by the same standards discussed in the previous section, *i.e.*, requiring a "(1) a causal relationship between the policy or custom and the [alleged violation of a Constitutional right] and (2) deliberate indifference." *Burke*, 935 F.3d at 999.

It is possible, however, that Plaintiff intends to sue these defendants in their individual capacities. To state a viable claim against a government actor in his individual capacity, it vital that "the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). The present Complaint does not specify what, if anything, Keller, Jones, or Sapien did in violation of Plaintiff's Constitutional rights.

Plaintiff's claims against these defendants shall therefore be dismissed without prejudice.

E. The Substantive Law Governing Plaintiff's Claims.

In addition to the foregoing pleading defects, Plaintiff's claims are substantively not viable for the following reasons.

1. First Amendment Claims.

Subject to reasonable limitations, inmates "retain protections afforded by the First Amendment[.]" *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Among the protections of the First Amendment are the free exercise of religion, freedom of speech, the right to peaceable assembly, and the right to petition the Government for a redress of grievances. U.S. Const. amend. I. The present Complaint does not include any discernable First Amendment claims, and the Court will not attempt to guess what his claims might be or construct legal theories on his behalf. *Smith*

*v. U.S.*, 561 F.3d 1090, 1096 (10th Cir. 2009) (holding that a pro se plaintiff must supply sufficient factual allegations and construct his own legal theories). If Plaintiff believes that his First Amendment rights have been violated, he may file a second amended complaint which should include a short and plain statement of the claim showing that he is entitled to relief under § 1983. *See* Fed. R. Civ. P. 8(a)(2) (requiring a plaintiff to provide a short and plain statement of his claim and entitlement to relief).  It should also abide by the pleading standards discussed throughout this Memorandum Opinion.

    2. <u>Fourth Amendment Claims</u>.

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures of their "persons, houses, papers, and effects[.]" U.S. Const. amend. IV. While inmates retain some measure of Fourth Amendment rights, "[p]rison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). A prison practice that infringes upon a specific constitutional guarantee "must be evaluated in light of the central objective of prison administration, safeguarding institutional security." *Id.*; *see Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."). The present Complaint does not include any discernable Fourth Amendment claims, and the Court will not attempt to guess what his claims might be or construct legal theories on his behalf. It is Plaintiff's prerogative to pursue such a claim in a second amended complaint.

    3. <u>Fifth Amendment Claims</u>.

The Complaint does not clarify the nature of Plaintiff's Fifth Amendment claim, but from the allegations it appears likely that the claim arises from the ten-day term of solitary confinement

7

which was imposed for reasons not apparent to Plaintiff. To state a due process claim based on a term of solitary confinement, a plaintiff must allege facts showing that it imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484. (1995). In evaluating such a claim, the Court must afford "appropriate deference and flexibility to [MDC] officials trying to manage a volatile environment. *Sandin*, 515 U.S. at 482. Based on the sparse allegations in the Complaint, it appears that MDC officials were faced with a volatile environment—*i.e.*, Plaintiff had witnessed the "brutal murder" of another inmate, and that the ten-day term of solitary confinement was not atypical or a significant hardship incidental to then-daily life at MDC—*i.e.,* inmates were regularly locked down in their cells for seventy-two hours a week. *See Sandin*, 515 U.S. 472 at 485-87 (solitary confinement did not trigger a due process violation where the conditions at the prison involved significant amounts of lockdown time even for inmates in the general population therefore a thirty-day period segregation did not days did not work a major disruption in the claimant's environment). *Sandin*, 515 U.S. at 485–87. Plaintiff does not allege that the solitary confinement term affected the duration of his sentence. *Id.* at 487 (recognizing another basis for a due process claim). If Plaintiff nevertheless believes he has a viable due process claim, he is at liberty to pursue it in a second amended complaint.

    4. <u>Eighth Amendment Claims</u>.

To prove that prison conditions amount to cruel and unusual punishment, the plaintiff must prove, among other things, that the condition complained of is, "objectively, sufficiently serious" that it "results in the denial of the minimal civilized measure of life's necessities[.]" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Additionally, the plaintiff must satisfy a subjective component. In the municipal liability context, the subjective component is satisfied by showing

the municipality had actual or constructive notice that its action or inaction would almost certainly result in a constitutional violation, and it consciously disregarded the risk of harm. *Layton v. Bd. of Cnty. Comm'rs of Oklahoma Cnty.*, 512 F. App'x 861, 871 (10th Cir. 2013). For individual liability, a plaintiff may satisfy the subjective component by showing that a state actor knew about, but disregarded, a substantial risk of harm. *Farmer*, 511 U.S. at 847.

To the extent Plaintiff's Eighth Amendment claim is based upon lockdowns at MDC, extended periods of in-cell lockdown satisfy the objective component of an Eighth Amendment claim in some circumstances. *See, e.g., Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 810 (10th Cir. 1999) ("[T]here can be no doubt that total denial of exercise for an extended period of time would constitute cruel and unusual punishment[.]"); *Thompson v. Lengerich*, 798 F. App'x 204, 212 (10th Cir. 2019) (holding that prolonged lockdowns and increased danger to inmates resulting from policy of understaffing stated Eighth Amendment claim). On the other hand, conditions of confinement may be restrictive and harsh without violating the Eighth Amendment. *Barney v. Pulsipher*, 143 F.3d 1299, 1311-12 (10th Cir. 1998). An important factor is the length of time the at-issue condition persisted. *Id.* at 1312. Here, Plaintiff alleges that he was locked down for seventy-two hours a week (amounting to three days a week) for several months. In the context of incarceration, three days a week of lockdown, does not amount to a deprivation of the minimal civilized measure of life's necessities. *See, e.g.*, *Hill v. Pugh*, 75 Fed. App'x 715, 721 (10th Cir. 2003) (finding no cruel and unusual punishment where inmate was "isolated in his cell twenty-three hours a day for five days a week and twenty-four hours the remaining two days").

Further, the Complaint is devoid of allegations showing that a municipal policy underlay the lockdowns at MDC. *See generally, Thompson*, 798 F. App'x at 212 (failing to remedy ongoing constitutional violations may show municipality's deliberate indifference); *Bond v. Oklahoma*

*Cnty. Crim. Just. Auth.*, No. CIV-23-05-D, 2023 WL 2878772, at *4 (W.D. Okla. Apr. 10, 2023) (holding plaintiff stated viable claim by showing municipality maintained custom of understaffing and inadequately supervising jail, was on notice that deficiencies posed significant risks to inmate safety, and consciously disregarded risks). Also absent are allegations showing that any individual knew of, but remained deliberately indifferent to, a serious risk of harm as a result of the lockdowns.

To the extent Plaintiff's Eighth Amendment claim is based on his contraction of Covid and/or lack of treatment he received while at MDC, the claim is not adequately factually developed. The Complaint does not include allegations supporting the objective or subjective components of an Eighth Amendment claim arising from Plaintiff's contraction of or treatment for Covid. *See Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1262–63 (10th Cir. 2022) (A medical need is sufficiently serious to satisfy the objective component "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"; or there has been a delay in medical care resulting in "a lifelong handicap, permanent loss, or considerable pain."); *Farmer*, 511 U.S. at 834, 837 ("The subjective prong requires a plaintiff to establish that a prison official had "a sufficiently culpable state of mind" meaning that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

    5. <u>Fourteenth Amendment Claims</u>.

In relevant part, the Fourteenth Amendment prohibits states from depriving people of "life, liberty, or property, without due process of law" and from denying any person "equal protection

of the laws." U.S. Const. amend. XIV. It is not clear whether Plaintiff seeks to invoke the due process or the equal protection clause of the Fourteenth Amendment, nor it is not clear what the claim might be based upon. In summary, if Plaintiff wishes to state an equal protection claim, he must allege facts showing that prison officials treated him differently from similarly situated prisoners and that the disparate treatment was not reasonably related to penological interests. *Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 752 (10th Cir. 2019); *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006). If he wishes to state a procedural due process claim, he should show that he was deprived of an interest protected by the due process clause and allege facts showing why he was not afforded an appropriate level of process related to the deprivation. *Merrifield v. Bd. of Cty. Comm'rs*, 654 F.3d 1073, 1078 (10th Cir. 2011). If he wishes to pursue a substantive due process claim, he should plead facts showing misconduct by government officials so outrageous that shocks the conscience. *United States v. Kennedy*, 225 F.3d 1187, 1194 (10th Cir. 2000); *see Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995) (a plaintiff "must do more than show that [a defendant] intentionally or recklessly caused injury to [him] by abusing or misusing government power"; he "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."). Otherwise, if Plaintiff wishes to pursue claims that the Court has not discerned, he should clarify and develop his theories in an amended complaint.

III. <u>Plaintiff May File an Amended Complaint.</u>

Generally, *pro se* plaintiffs should be given a reasonable opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend should be granted unless the amendment would be futile. *Hall*, 935 F.2d at 1109. Accordingly, Plaintiff shall be granted a thirty-day deadline within which to file an amended

complaint. If Plaintiff declines to timely amend, the Court may dismiss the case with prejudice.

IV. <u>The IFP Motion Shall be Granted</u>.

Plaintiff's financial information reflects he is unable to prepay the $402 filing fee for his prisoner civil rights complaint. The Court will therefore grant Plaintiff leave to *proceed in forma pauperis*, which reduces the fee to $350, and allow Plaintiff to pay in installments. *See* 28 U.S.C. § 1915(b). Plaintiff's financial information also reflects that Plaintiff does not have sufficient funds available to prepay the $5.00 habeas filing fee. (Doc. 3). Pursuant to 28 U.S.C. § 1915(b)(4), Plaintiff shall be excused from prepaying the filing fee; however, he shall be required to promptly submit the reduced filing fee in full if funds are available in the future. *See* 28 U.S.C. § 1915(b)(1) (The Court shall assess and, when funds exist, must collect, the filing fee).

**IT IS ORDERED:**

(1) Each of the claims set forth in Plaintiff's Amended Complaint **(Doc. 2)** are **DISMISSED** without prejudice.

(2) Plaintiff is granted leave to file an amended complaint within thirty days of the entry of this Memorandum Opinion and Order.

(3) Plaintiff's IFP Motion **(Doc. 3)** is **GRANTED** such that Plaintiff is excused from prepaying the filing fee; however, Plaintiff shall be required to promptly submit the reduced filing fee in full if funds are available in the future.

_____
SENIOR UNITED STATES DISTRICT JUDGE