IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JASON BISHOP,

    Plaintiff,

v.   No. 23-cv-00455-JCH-KBM

THE BOARD OF COMMISSIONERS OF
THE COUNTY OF BERNALILLO,
METROPOLITAN DETENTION CENTER,
JASON JONES, SERGIO SAPIEN,
TIM KELLER,

    Defendants.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

THIS MATTER is before the Court following Jason Bishop's failure to file a second amended complaint as directed. Plaintiff is incarcerated and proceeding *pro se.* In his Amended Complaint for Violation of Civil Rights (hereinafter the "Complaint"), Plaintiff alleged that the conditions of confinement at MDC violated his rights guaranteed by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. (Doc. 2 at 3).

Specifically, Plaintiff alleged that his incarceration at MDC began on September 24, 2021. (Doc. 2 at 4). From September 14, 2021 through June 10, 2023, Plaintiff alleged that he was locked in his cell for several days (amounting to seventy-two hours a week) and deprived of out-of-cell time to shower, exercise, or socialize. (Doc. 2 at 5). He also alleged that on or about October 23, 2021, he witnessed the brutal murder of Leon Martinez. (Doc. 2 at 5). After the murder, Plaintiff alleged that "for no apparent reason" he was placed in solitary confinement for ten days. (Id.). Then, on January 6, 2022, he contracted Covid, but allegedly did not receive treatment. (Id.).

Plaintiff claimed that he experienced mental anguish and physical suffering when he was locked in his cell for seventy-two hours a week from mid-September 2021 through mid-June 2023; that he has post-traumatic nightmares and fears for his life after witnessing Martinez's murder; that the ten-day solitary confinement term constituted cruel and unusual punishment; and that his health declined because he contracted Covid such that he now has constant kidney pain. (Id.). He sought monetary damages. (Doc. 2 at 3, 5).

By a Memorandum Opinion and Order entered February 27, 2024, the Court screened the Complaint and determined it fails to state a cognizable claim. (Doc. 6) (the Screening Ruling). Summarized, the Court determined that Plaintiff's claims against MDC must be dismissed with prejudice because a "detention facility is not a person or legally created entity capable of being sued." *White v. Utah*, 5 F. App'x 852, 853 (10th Cir. 2001); *see Gaines v. U.S. Marshals Serv.*, 291 F. App'x 134, 135 (10th Cir. 2008) (a county detention center "is not a suable entity"). In the § 1983 context, "suing a detention facility is the equivalent of attempting to sue a building." *Gallegos v. Bernalillo Cnty. Bd. of Cnty. Commr's*, 272 F. Supp. 3d 1256, 1267 (D.N.M. 2017).

The Court instructed that for any claims against the jail, the Board of County Commissioners of the County of Bernalillo (named as a defendant in this case) was the proper defendant. *See Mayfield v. Pres Hosp. Admin.*, No. CV 17-00398 JCH/KRS, 2021 WL 3772214, at *3 (D.N.M. Aug. 25, 2021) ("MDC is an agency of Bernalillo County, not a municipal agency[.]"); NMSA 1978 § 4-46-1 ("In all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be the board of county commissioners of the county of ..........,"). The Court explained that, as pled, Plaintiff's claims against Bernalillo County were not viable because Plaintiff did not identify an official policy or custom underlying the alleged harm. Nor did he plead facts satisfying the deliberate indifference standard. The Court provided a

summary of the law governing these legal standards and concepts. See (Doc. 6 at 4-5).

As to Plaintiff's claims against Tim Keller, the Mayor of Albuquerque; Jason Jones, the Chief of MDC; and Sergio Sapien, the Assistant Chief of MDC in their official capacities, the Court explained that suing an official in his official capacity is the same as asserting a claim against the municipality or county the official represents. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010); *see also Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). And noted that if Plaintiff intended to sue Keller, Sapien, and/or Jones in their official capacities, the claims are governed by the same standards applicable to a claim against a municipality. (Doc. 6 at 5-6).

The Court also noted that it was possible that Plaintiff intended to sue these defendants in their individual capacities. To that end, the Court explained that to state a viable claim against a government actor in his individual capacity, it vital that "the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). As the Complaint did not specify what, if anything, Keller, Jones, or Sapien did in violation of Plaintiff's Constitutional rights, the Court dismissed Plaintiff's claims against the individual defendants without prejudice.

To further facilitate Plaintiff's ability to file a viable second amended complaint, the Court also canvassed the substantive law governing Plaintiff's claims as follows.

As to Plaintiff's First Amendment claims, the Court explained that subject to reasonable limitations, inmates "retain protections afforded by the First Amendment[.]" *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Among the protections of the First Amendment are the free

exercise of religion, freedom of speech, the right to peaceable assembly, and the right to petition the Government for a redress of grievances. U.S. Const. amend. I. The Court held that Plaintiff's Complaint did not include any discernable First Amendment claims, and the Court declined to guess what his claims might be or construct legal theories on his behalf. *Smith v. U.S.*, 561 F.3d 1090, 1096 (10th Cir. 2009) (holding that a pro se plaintiff must supply sufficient factual allegations and construct his own legal theories). The Court advised Plaintiff that if he believed that his First Amendment rights were violated, he could file a second amended complaint, including a short and plain statement of the claim showing that he is entitled to relief under § 1983. *See* Fed. R. Civ. P. 8(a)(2) (requiring a plaintiff to provide a short and plain statement of his claim and entitlement to relief).

As to Plaintiff's potential Fourth Amendment claims, the Court observed that the Constitution guarantees the right to be free from unreasonable searches and seizures of their "persons, houses, papers, and effects[.]" U.S. Const. amend. IV. While inmates retain some measure of Fourth Amendment rights, "[p]rison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). A prison practice that infringes upon a specific constitutional guarantee "must be evaluated in light of the central objective of prison administration, safeguarding institutional security." *Id.*; *see Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."). Again, the Complaint did not include any discernable Fourth Amendment claims, but the Court advised Plaintiff that it was his prerogative to pursue such a claim in a second amended complaint.

The Complaint also did not include a clearly identifiable Fifth Amendment claim, but from

the allegations, the Court noted that it is likely that the claim arises from the ten-day term of solitary confinement which was imposed for reasons not apparent to Plaintiff. The Court explained that to state a due process claim based on a term of solitary confinement, a plaintiff must allege facts showing that it imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484. (1995). In evaluating such a claim, the Court must afford "appropriate deference and flexibility to [MDC] officials trying to manage a volatile environment. *Sandin*, 515 U.S. at 482. The Court observed that the sparse allegations in the Complaint, suggest that MDC officials were faced with a volatile environment— *i.e.*, Plaintiff had witnessed the "brutal murder" of another inmate, and that the ten-day term of solitary confinement was not atypical or a significant hardship incidental to then-daily life at MDC—*i.e.,* inmates were regularly locked down in their cells for seventy-two hours a week. *See Sandin*, 515 U.S. 472 at 485-87 (solitary confinement did not trigger a due process violation where the conditions at the prison involved significant amounts of lockdown time even for inmates in the general population therefore a thirty-day period segregation did not days did not work a major disruption in the claimant's environment). *Sandin*, 515 U.S. at 485–87. Plaintiff did not allege that the solitary confinement term affected the duration of his sentence. *Id.* at 487 (recognizing another basis for a due process claim). The Court advised Plaintiff that if nevertheless wished to pursue a viable due process claim, could pursue it in a second amended complaint.

As to Plaintiff's Eighth Amendment claims, the Court stated that, to prove that prison conditions amount to cruel and unusual punishment, the plaintiff must prove, among other things, that the condition complained of is, "objectively, sufficiently serious" that it "results in the denial of the minimal civilized measure of life's necessities[.]" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Additionally, the plaintiff must satisfy a subjective component. In the municipal liability

5

context, the subjective component is satisfied by showing the municipality had actual or constructive notice that its action or inaction would almost certainly result in a constitutional violation, and it consciously disregarded the risk of harm. *Layton v. Bd. of Cnty. Comm'rs of Oklahoma Cnty.*, 512 F. App'x 861, 871 (10th Cir. 2013). For individual liability, a plaintiff may satisfy the subjective component by showing that a state actor knew about, but disregarded, a substantial risk of harm. *Farmer*, 511 U.S. at 847.

The Court observed that to the extent Plaintiff's Eighth Amendment claim was based upon lockdowns at MDC, extended periods of in-cell lockdown satisfy the objective component of an Eighth Amendment claim in some circumstances. *See, e.g., Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 810 (10th Cir. 1999) ("[T]here can be no doubt that total denial of exercise for an extended period of time would constitute cruel and unusual punishment[.]"); *Thompson v. Lengerich*, 798 F. App'x 204, 212 (10th Cir. 2019) (holding that prolonged lockdowns and increased danger to inmates resulting from policy of understaffing stated Eighth Amendment claim). On the other hand, conditions of confinement may be restrictive and harsh without violating the Eighth Amendment. *Barney v. Pulsipher*, 143 F.3d 1299, 1311-12 (10th Cir. 1998). An important factor is the length of time the at-issue condition persisted. *Id.* at 1312. Plaintiff alleged that he was locked down for seventy-two hours a week (amounting to three days a week) for several months. In the context of incarceration, three days a week of lockdown, does not amount to a deprivation of the minimal civilized measure of life's necessities. *See, e.g.*, *Hill v. Pugh*, 75 Fed. App'x 715, 721 (10th Cir. 2003) (finding no cruel and unusual punishment where inmate was "isolated in his cell twenty-three hours a day for five days a week and twenty-four hours the remaining two days").

The Court also noted that the Complaint was devoid of allegations showing that a

municipal policy underlay the lockdowns at MDC. *See generally, Thompson*, 798 F. App'x at 212 (failing to remedy ongoing constitutional violations may show municipality's deliberate indifference); *Bond v. Oklahoma Cnty. Crim. Just. Auth.*, No. CIV-23-05-D, 2023 WL 2878772, at *4 (W.D. Okla. Apr. 10, 2023) (holding plaintiff stated viable claim by showing municipality maintained custom of understaffing and inadequately supervising jail, was on notice that deficiencies posed significant risks to inmate safety, and consciously disregarded risks). Also absent from the Complaint were allegations showing that any individual knew of, but remained deliberately indifferent to, a serious risk of harm from the lockdowns.

The Court observed, further that to the extent Plaintiff's Eighth Amendment claim was based on his contraction of Covid and/or lack of treatment he received while at MDC, the claim was not adequately factually developed. The Complaint did not include allegations supporting the objective or subjective components of an Eighth Amendment claim arising from Plaintiff's contraction of or treatment for Covid. *See Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1262–63 (10th Cir. 2022) (A medical need is sufficiently serious to satisfy the objective component "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"; or there has been a delay in medical care resulting in "a lifelong handicap, permanent loss, or considerable pain."); *Farmer*, 511 U.S. at 834, 837 ("The subjective prong requires a plaintiff to establish that a prison official had "a sufficiently culpable state of mind" meaning that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Finally, as to Plaintiff's Fourteenth Amendment claims, the Court observed that, in relevant

part, the Fourteenth Amendment prohibits states from depriving people of "life, liberty, or property, without due process of law" and from denying any person "equal protection of the laws." U.S. Const. amend. XIV. It is not clear whether Plaintiff seeks to invoke the due process or the equal protection clause of the Fourteenth Amendment, nor it is not clear what the claim might be based upon. The Court stated that, if Plaintiff wished to state an equal protection claim, he must allege facts showing that prison officials treated him differently from similarly situated prisoners and that the disparate treatment was not reasonably related to penological interests. *Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 752 (10th Cir. 2019); *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006). If he wished to state a procedural due process claim, he should show that he was deprived of an interest protected by the due process clause and allege facts showing why he was not afforded an appropriate level of process related to the deprivation. *Merrifield v. Bd. of Cty. Comm'rs*, 654 F.3d 1073, 1078 (10th Cir. 2011). If he wished to pursue a substantive due process claim, he should plead facts showing misconduct by government officials so outrageous that shocks the conscience. *United States v. Kennedy*, 225 F.3d 1187, 1194 (10th Cir. 2000); *see Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995) (a plaintiff "must do more than show that [a defendant] intentionally or recklessly caused injury to [him] by abusing or misusing government power"; he "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."). The Court also noted that if Plaintiff wished to pursue claims that the Court did not discern, he should clarify and develop his theories in an amended complaint.

      Consistent with *Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990), the Court *sua sponte* permitted Plaintiff to file an amended complaint curing the above deficiencies within thirty days. Plaintiff was warned that the failure to timely file an amended complaint will result

in the dismissal of this case with prejudice.  The deadline to file a second amended complaint expired on March 28, 2024. Plaintiff did not amend his pleading or otherwise respond to the Screening Ruling.  The Court will therefore dismiss this action, including the Amended Complaint for Violation of Civil Rights, filed June 14, 2023, with prejudice pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that Plaintiff's Amended Complaint **(Doc. 2)** is **DISMISSED** with prejudice. The Court will order a separate judgment closing this civil case.

_____
SENIOR UNITED STATES DISTRICT JUDGE